UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
JAMES GALLAGHER

                Plaintiff,         MEMORANDUM AND ORDER
                                                       16-CV-4779

- against –

AEG MANAGEMENT BROOKLYN, LLC,
THEATRICAL STAGE EMPLOYEES LOCAL
4 I.A.T.S.E., and MIKE DESARO, *individually*

                Defendants.
------------------------------------------------------x
GLASSER, Senior United States District Judge:

       Plaintiff James Gallagher ("Gallagher" or "Plaintiff") brings claims for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, and the New York City Human Rights Law, N.Y. Admin. Code § 8-107, et seq. (NYCHRL), against three defendants. Before the Court are two motions to dismiss pursuant to Fed. R. Civ. P. § 12(b)(6) by defendant Theatrical Stage Employees Local 4 I.A.T.S.E. ("Local 4") and defendant Mike Dasaro ("Dasaro.").[1] The third defendant, AEG Management Brooklyn LLC ("AEG"), answered Plaintiff's amended complaint and asserted cross-claims against Local 4 on January 13, 2017. ECF 27.

## BACKGROUND

       These facts are taken from Plaintiff's Amended Complaint (ECF 24, hereinafter "Complt.") and are presumed true for the purposes of this motion.

       Plaintiff Gallagher is a carpenter who has been a member of defendant Local 4, a labor union organized under the laws of New York, since 2002. Complt. at ¶¶ 11, 19. Local 4 placed

---

[1] Defendant Dasaro's name is misspelled in the case caption. His counsel indicates that his last name is properly spelled "Dasaro," and he will be referred to as such herein. ECF 28-1, Dasaro Memorandum of Law ("Dasaro MOL"), at p. 1 n.1.

Gallagher in various job assignments with third party companies, which included determining the location and the duration of the assignment and assigning him additional projects and tasks as needed. Id. at ¶ 23. Local 4 determined Plaintiff's rate of compensation and negotiated his salary with the third party companies. Id. at ¶ 24. Gallagher alleges that he received various benefits, including medical benefits and a pension plan, "by virtue of his relationship" with Local 4. Id. at ¶ 26. Because he performed well on various projects, Gallagher was assigned to be the "head crew chief" numerous times, which position came with a $6.00 per hour pay increase ($48.00 versus $42.00). Id. at ¶¶ 27, 49.

The pertinent events occurred during Gallagher's job assignment with defendant AEG, which began in the fall of 2012, during which he worked as a stage hand constructing sets at the Barclays Center in Brooklyn. Id. at ¶¶ 23, 28. AEG was responsible for paying his wages, setting his schedule, supplying equipment, and providing relevant manuals and training. Id. at ¶ 21. Plaintiff earned $35.00 per hour, or approximately $1,000 per week. Id. at ¶ 29. Gallagher was supervised by defendant Dasaro, the head carpenter at the Barclays job site who was also a member of Local 4. Id. at ¶¶ 22, 29.

While at work together in May 2014, Dasaro showed Plaintiff a photo of a naked man about to receive oral sex from a woman. Id. at ¶ 31 (the "First Photo"). The photo was edited, or "photo-shopped," so that Plaintiff's face was superimposed on the naked man's face, and the face of another male co-worker was superimposed on the woman's face. Id. Plaintiff told Dasaro he was offended by the picture and unhappy that Dasaro was showing it to other co-workers. Id. at ¶ 32. Dasaro responded by saying, "What? You don't like Andy sucking your [penis]?" Id. at ¶ 33. In addition, Dasaro had a second photograph which depicted Gallagher with bare female breasts superimposed on his chest. Id. at ¶ 34 (the "Second Photo").

2

Throughout the spring and summer of 2014, Dasaro showed or text messaged the photos to Gallagher's co-workers at least six times. Id. at ¶¶ 35, 39. Then, twice in August 2014, Dasaro displayed the First Photo to groups of co-workers while Gallagher was present. Id. at ¶¶ 36-37. Gallagher communicated his objection to Dasaro each time. Id. at ¶¶ 35-37. In late August 2014, Gallagher complained about Dasaro's behavior to Jeff Gagliardo ("Gagliardo"), an executive board member of Local 4 who is also Dasaro's step-father, but Dasaro's behavior continued unabated throughout the fall of 2014. Id. at ¶¶ 38, 39.

On November 24, 2014, Plaintiff again complained that Dasaro was harassing him, this time to his crew chief Artie Grillman ("Grillman"), another executive board member of Local 4 who also worked at the Barclays job site as a manager. Id. at ¶ 40. Grillman recommended that Gallagher write a letter to the Local 4 executive board and also complain to the human resources department at the Barclays Center ("Barclays HR"). Id. at ¶ 41. Grillman text messaged Gallagher the phone number of the person he should contact at Barclay's HR. Id. at ¶ 42.

Gallagher followed Grillman's recommendations. On December 16, 2014, he met with Barclays HR and made a sexual harassment complaint against Dasaro. Id. at ¶ 43. Barclays investigated his allegations, found them to be substantiated, and implemented a sexual harassment training course in response. Id. Gallagher also wrote a letter to the Local 4 executive board "detailing the sexual harassment he was facing." Id. at ¶ 41. Soon after making that complaint, Local 4 "significantly reduced" Gallagher's work hours, and "the number of jobs he was called to work reduced by at least one-third." Id. at ¶ 44. On January 5, 2015, Gallagher approached Grillman to discuss the reduction in his job assignments. Id. at ¶ 45. On March 19, 2015, Plaintiff met with the Local 4 executive board "to discuss the sexual harassment he had been facing" and the decrease in his work assignments. Id. at ¶ 46.

3

Sometime thereafter, Dasaro, Gagliardo, and Sean Dasaro (Dasaro's brother, also a Local 4 member), initiated union charges against Gallagher. Id. at ¶ 47. They claimed that Gallagher had violated an unwritten union policy which forbade him from complaining to Barclays HR instead of keeping his complaints "in-house." Id. Following a hearing before the Local 4 executive board on April 24, 2015, Gallagher was found "guilty" of the charges, fined $1,000 and precluded for one year from being named "head crew chief." Id. at ¶¶ 48-49. Plaintiff estimates lost income of at least $25,000 as a result. Id. at ¶ 48.

Plaintiff filed discrimination charges with the Equal Employment Opportunity Commission and received two Notices of Right to Sue, dated June 10, 2016. Id. at ¶¶ 5, 6; see also ECF 1 at pp. 14-15. He initiated this action within 90 days thereafter, on August 25, 2016. Local 4 and Dasaro have moved pursuant to Fed. R. Civ. P. § 12(b)(6) to dismiss all of the claims asserted against them.

**LEGAL STANDARD**

A plaintiff's pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

The Second Circuit has warned that courts should be careful to avoid the hasty dismissal of civil rights cases. See e.g., Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001) (citations omitted). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff alleging employment

4

discrimination need not plead facts to establish a *prima facie* case. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002); see also Littlejohn v. City of New York, 795 F.3d 297, 311 (2d. Cir. 2015). Nonetheless, "the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim." Barbosa v. Continuum Health Partners, Inc., 716 F.Supp.2d 210, 215 (S.D.N.Y. 2010) (citation and quotation omitted).

## DISCUSSION

Plaintiff asserts five causes of action against Local 4 for discrimination and retaliation under Title VII and the NYCHRL, and two causes of action against Dasaro for discrimination and retaliation under the NYCHRL only. For the reasons stated herein, Local 4's motion is GRANTED in part and DENIED in part. Dasaro's motion is DENIED.

### I. Claims Against Local 4

Plaintiff asserts five claims against Local 4: (1) discrimination in violation of Title VII; (2) retaliation in violation of Title VII; (3) discrimination in violation of NYCHRL § 8-107(1); (4) retaliation in violation of NYCHRL § 8-107(7); and (5) discrimination in violation of NYCHRL § 8-107(13). See generally Complt.

**A. Discrimination Claims**

*1. Title VII*

Plaintiff alleges that Local 4 discriminated against him because of his sex by creating a hostile work environment in violation of Title VII, 42 U.S.C. § 2000e et seq. Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). A plaintiff may assert Title VII claims against a union either in its capacity as an employer or as a labor organization. Kern v. City of Rochester, 93 F.3d 38, 46 (2d Cir. 1996);

5

see also Yerdon v. Henry, 91 F.3d 370 (2d Cir. 1996). Here, Gallagher brings his discrimination claims against Local 4 as his employer only. ECF 33, Plaintiff's Opposition ("Opp."), at p. 18.

To plead Title VII discrimination against a union in its capacity as a purported employer, Plaintiff must first "demonstrate that the union meets the Title VII definition of 'employer.'" Kern, 93 F.3d at 46. Title VII vaguely defines an employer as "a person engaged in an industry affecting commerce" that has "fifteen or more employees." 42 U.S.C. § 2000e(b). Courts in this Circuit "have applied common-law agency principles to determine whether an employment relationship exists" in a two-step inquiry. Conde v. Sisley Cosmetics USA, Inc., No. 11-CV-4010, 2012 WL 1883508, at *2 (S.D.N.Y. May 23, 2012); see also Knight v. State Univ. of N.Y. at Stony Brook, No. 13-CV-0481, 2013 WL 6002846, at *3 (E.D.N.Y. Nov. 12, 2013). First, the court determines whether the plaintiff has received some form of remuneration from the defendant, such that he was actually "hired" as an employee. York v. Ass'n of Bar of City of N.Y., 286 F.3d 122, 125–26 (2d Cir. 2002); see also Gulino v. N.Y. State Educ. Dep't, 460 F.3d 361, 372 (2d Cir. 2006). If he has, the court then considers the thirteen "Reid factors" articulated in Community for Creative Non–Violence v. Reid, 490 U.S. 730, 751 (1989). Gulino, 460 F.3d at 371.

Under the first requirement, remuneration is construed broadly. The employee must receive a financial benefit, but it need not be monetary. Pietras v. Board of Fire Commn'rs of Farmingville Fire Dist., 180 F.3d 468, 473 (2d Cir. 1999). Sufficient remuneration may exist if the plaintiff receives "numerous job-related benefits" such as medical insurance, retirement pensions, life insurance, vacation time, sick pay or promises, or any of the above. Id. Here, Plaintiff pleads facts that he received sufficient remuneration from Local 4 to satisfy the first requirement. Gallagher pleads that Local 4 controlled where and for how long he worked at a

6

particular job assignment, negotiated his rate of pay, and that he received healthcare, pension and annuity benefits. Complt at ¶¶ 23, 24, 26. Additionally, Local 4 decided whether and how often to assign Gallagher to be "head crew chief." It is telling that, when Local 4 punished Gallagher "by being precluded from being a 'head crew chief' for one year," he lost at least $25,000 in income as a result. Id. at ¶¶ 48-49. Viewed in the light most favorable to Plaintiff, this is a clear indication that he received remuneration from Local 4. Mohr v. United Cement Mason's Union Local 780, No. 15-CV-4581, 2017 WL 1187690, at *3 (E.D.N.Y. Mar. 30, 2017).

In the second prong of the inquiry, the Court balances the "Reid factors," which are:

> the hiring party's right to control the manner and means by which the product is accomplished[;] ... the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Reid, 490 U.S. at 751-52. In undertaking this analysis, the greatest emphasis is placed on the first factor, "the extent to which the hiring party controls the manner and means by which the worker completes his or her assigned tasks." United States v. City of N.Y., 359 F.3d 83, 92 (2d Cir. 2004) (citation omitted).

Gallagher contends that he was supervised by Dasaro, who "directed Plaintiff as to which tasks he was to accomplish as well as how to go about doing them (if necessary)." Complt. at ¶ 29; Opp. at p. 5. However, Dasaro was working for Barclays' and acting as Barclays' agent in directing Gallagher to complete his tasks. The fact that he was also a member of Local 4 does not mean that his control was imputed to Local 4 when the tasks were performed solely for Barclays' benefit and at its direction. Additionally, that Local 4 assigned Plaintiff to a job site for a given period of time does not suggest it controlled his day-to-day tasks while he was on the

7

job for over two years at Barclays. An employer "controls or has the right to control both the result to be accomplished and the 'manner and means' by which the purported employee brings about that result." Eisenberg v. Advance Relocation & Storage, Inc., 237 F.3d 111, 114 (2d Cir. 2000); see also Gulino, 460 F.3d at 379 (purported employer did not "exercise the workaday supervision necessary to an employment relationship"). There are no facts alleged that Local 4 maintained the level of supervision necessary to control the manner and means of Gallagher's daily duties during his assignment at Barclays.

As for the remaining factors, a few weigh in Plaintiff's favor. Gallagher alleges that Local 4 determined the location of the work, the duration of the employment relationship, whether additional projects could be assigned, and it had the ability to hire and pay assistants when needed. Complt. at ¶¶ 23, 25. The remaining factors are either irrelevant or suggest a non-employment relationship between Local 4 and Gallagher.

On balance, the Reid factors weigh against an inference that Local 4 was Gallagher's employer. Therefore, Plaintiff's claim for Title VII discrimination claim against Local 4 in that capacity cannot be maintained, and count one of the Complaint is dismissed as against it.

2. *NYCHRL*

Plaintiff next brings discrimination claims against Local 4 under NYCHRL §§ 8-107(1) and (13). As with the Title VII discrimination claim, these claims are also brought against Local 4 in its capacity as a purported employer. Wang v. Phoenix Satellite Television US, Inc., 976 F. Supp. 2d 527, 532 (S.D.N.Y. 2013). We use a "nearly identical" standard to determine the employment relationship under the NYCHRL as under Title VII.[2] Id. at 536. Plaintiff has failed

---

[2] Instead of the Reid factors, New York courts apply a four factor balancing test that considers whether the proposed employer: (1) had the power of the selection and engagement of the employee; (2) made the payment of salary or wages to the employee; (3) had the power of

8

to allege an employment relationship between himself and Local 4, and for the same reasons that Plaintiff's Title VII discrimination claim fails, so too must his NYCHRL discrimination claims fail as against Local 4.[3]

**B. Retaliation Claims**

Gallagher asserts retaliation claims against Local 4 under Title VII, 42 U.S.C. § 2000e-3 and under the NYCHRL § 8-107(7). While not clearly articulated, it appears that Plaintiff brings these claims against Local 4 both in its capacity as a labor organization and as his employer. Opp. at pp. 12, 18-21. For the reasons already indicated, claims against Local 4 as an employer are dismissed, and we address the retaliation claims against Local 4 in its capacity as a labor organization only.[4]

---

dismissal over the employee; and (4) had the power to control the employee's conduct. Alie v. NYNEX Corp., 158 F.R.D. 239, 246 (E.D.N.Y. 1994). Courts place the greatest emphasis on the fourth factor, which is analogous to the "means and manner" test applied in the Title VII analysis. Id.

[3] Section 8-107(13) makes an employer vicariously liable for the discriminatory acts of its employee. Thus, the employment relationship relevant to the section 8-107(13) claim against Local 4 is the relationship between Dasaro and Local 4. The Complaint pleads no facts regarding that relationship, other than the conclusory statement that "Dasaro was an employee, agent, and/or independent contractor for both Defendant AEG Management and Defendant Local 4." Complt. at ¶ 14. Without more, at best the Court may assume that Dasaro maintained the same relationship with Local 4 as Gallagher did, which was that of a union member.

[4] In count two of the Complaint, Plaintiff cites to 42 U.S.C. § 2000e-3(a), which prohibits unions from retaliating against their members and prohibits employers from retaliating against their employees. The Complaint excludes the language from that subsection related to labor organizations, presumably for the sake of brevity. Local 4 argues that the claim against it should be dismissed because of that omission. ECF 34, Local 4 Reply, at p. 10. However, a complaint should not be dismissed "because it has proceeded under the wrong theory so long as it has alleged facts sufficient to support a meritorious legal claim." Arar v. Ashcroft, 585 F.3d 559, 594 (2d Cir. 2009) (citing cases). "Factual allegations alone are what matters." Northrop v. Hoffman of Simsbury, Inc., 134 F.3d 41, 46 (2d Cir. 1997). Plaintiff's failure to cite the correct language of the statute does not defeat his claim if his factual allegations are sufficient to support it.

9

1. *Title VII*

   a. Local 4 as a Labor Organization

Discrimination claims against labor organizations "are grounded in the union's duty of fair representation [] to its members." Klaper v. Cypress Hills Cemetery, 10-CV-1811, 2012 WL 959403, at *7 (E.D.N.Y. Mar. 21, 2012); see also Oparaji v. United Fed'n of Teachers, 418 F.Supp.2d 139, 147 (E.D.N.Y. 2006). The duty of fair representation requires a union to "serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 74, 76 (1991) (internal citations and quotations omitted) ("The duty of fair representation is . . . akin to the duty owed by other fiduciaries to their beneficiaries.").

Therefore, in addition to the substantive elements of a retaliation claim, to prevail on a Title VII claim against a union, Plaintiff must plead facts (1) that the union breached its duty of fair representation, and (2) that the union's actions were motivated by discriminatory animus. Klaper, 2012 WL 959403 at *7. A union breaches this duty when "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190 (1967). Conduct is arbitrary if it is "so far outside a wide range of reasonableness as to be irrational." Klaper, 2012 WL 959403 at *7. Conduct is in bad faith if "the union's actions constitute "fraud, deceitful action or dishonest conduct." Id. Additionally, "[a]t the pleading stage, Plaintiffs' allegations must at least suggest discriminatory intent." Hill v. City of N.Y., 136 F. Supp. 3d 304, 339 (E.D.N.Y. 2015); see also Oparaji, 418 F.Supp.2d at 147 ("Conduct that is irresponsible or grossly negligent but lacks an improper motive does not constitute a breach of the duty of fair representation." (internal quotation marks omitted)).

Gallagher has pled facts sufficient to infer that Local 4 breached its duty of fair representation and did so with discriminatory intent. Gallagher says that he complained to two executive board members of Local 4, Gagliardo (Dasaro's step-father) and Grillman, about Dasaro's harassment, and that Grillman recommended he contact Barclays HR and provided the phone number of the person to contact. A few months later, Dasaro and Gagliardo initiated union charges against Gallagher for violating an "unwritten policy" which directly contradicted Grillman's recommendation to complain to Barclays HR. For a union executive to instruct a member to take a certain action, and then months later to charge and penalize him under an "unwritten policy" for taking that very action is both arbitrary and smacks of dishonesty and bad faith. This is particularly so because it was Dasaro, the target of Gallagher's complaints, and his brother and step-father, who initiated the charges related to this "unwritten policy."

The Complaint would permit the jury to find that Local 4, through Grillman and Gagliardo, ratified Dasaro's discriminatory behavior about which they were both aware. Local 4 failed to investigate and pursue Gallagher's sexual harassment complaint, reduced his work hours following that complaint, tried him for charges brought by his harasser and penalized him for following the advice of a member of its executive board. Hill, 136 F.Supp. 3d at 340. The Complaint alleges actions by Local 4 that were arbitrary, in bad faith and made with a discriminatory intent sufficient to plead a retaliation claim against it as Gallagher's labor organization.

     b. Plaintiff's Retaliation Claims under Title VII

To plead a retaliation claim under Title VII, Plaintiff must establish that (1) he engaged in a protected activity; (2) Local 4 was aware of that activity; (3) he suffered an adverse action subsequent to such activity; and (4) there was a causal link between the protected activity and the

11

adverse action. Galdieri—Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998).

Local 4 argues only that Plaintiff has failed to sufficiently plead that he engaged in a protected activity.[5] ECF 29-1, Local 4 Memo of Law, at pp. 14-15. A protected activity is an "action taken to protest or oppose statutorily prohibited discrimination," including formal and informal complaints to management. Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C., No. 11-CV-5035, 2012 WL 3241402, at *12 (E.D.N.Y. Aug. 3, 2012), aff'd, 716 F.3d 10 (2d Cir. 2013). "[T]he plaintiff need not establish that the conduct [he] opposed was actually a violation of Title VII, but only that [he] possessed a good faith, reasonable belief that the underlying employment practice was unlawful under that statute." Galdieri—Ambrosini, 136 F.3d at 292. "The reasonableness of the belief is to be assessed in light of the totality of the circumstances." Id. Local 4 argues that the Complaint fails to allege gender-based discrimination or "a plausible basis for any good faith, reasonable belief that the alleged harassment was gender-based." Local 4 Reply, at p. 5.

Plaintiff complained to Local 4 about Dasaro's harassment on four occasions. First, in August 2014, "Plaintiff complained to an executive board member of Defendant Local 4—to wit—a person by the name of Jeff Gagliardo. . ." Complt. at ¶ 38. A few months later, "Plaintiff complained to his crew chief (a person named Artie Grillman) . . ." Id. at 40. In early December 2014, "Plaintiff wrote a letter to the executive board of Defendant Local 4 detailing the sexual

---

[5] The remaining factors of a retaliation claim have been sufficiently pled. Local 4 was on notice of Gallagher's complaints, and Gallagher suffered adverse employment actions when his hours were reduced and he was charged and found guilty of violating union policy, all of which occurred within temporal proximity of his various complaints to suggest a causal link. Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010) ("[F]ive months is not too long to find the causal relationship.").

12

harassment he was facing." Id. at ¶ 41. Subsequently, he had a meeting with the Local 4 executive board "to discuss the sexual harassment he had been facing at the hands of [] Dasaro, as well as the fact that he was receiving fewer jobs because of his complaints." Id. at ¶ 46.

Gallagher has adequately alleged he was engaged in protected activity. As discussed infra, a reasonable jury could indeed find that Dasaro's conduct was gender-based discrimination under the NYCHRL. Gallagher identified the conduct as "sexual harassment" and detailed it in writing and verbally. It is adequately alleged that Gallagher subjectively believed he was being sexually harassed, as he repeatedly asked Dasaro to stop sharing the photos, was humiliated, and made numerous complaints to his supervisors. There are also sufficient facts that his belief was objectively reasonable. Indeed, AEG investigated Gallagher's complaints and took remedial action once they were substantiated. Additionally, this Circuit had held that displays of obscene photographs and sexually offensive remarks can constitute a gender-based hostile work environment. See e.g. Ruiz v. City of N.Y., No. 14-CV-5231, 2015 WL 5146629, at *9 (S.D.N.Y. Sept. 2, 2015); Iannone v. Frederic R. Harris, Inc., 941 F. Supp. 403, 411 (S.D.N.Y. 1996). Gallagher has pled a retaliation claim against Local 4 under Title VII, and that claim survives the motion to dismiss.

2. *NYCHRL*

Plaintiff's retaliation claim under the NYCHRL is preempted by the federal duty of fair representation, codified in the National Labor Relations Act, 29 U.S.C. § 8(b). Langford v. Int'l Union of Operating Engineers, Local 30, 765 F. Supp. 2d 486, 507-08 (S.D.N.Y. 2011). NYCHRL claims against a union "are subsumed by the duty of fair representation when the gist of the claim is the failure to represent the plaintiff in a fair and non-discriminatory manner." Morillo v. Grand Hyatt N. Y., No. 13-CV-7123, 2014 WL 3498663, at *4 (S.D.N.Y. July 10,

2014) (collecting cases); see also Cole v. Cent. Park Sys., Inc., No. 09-CV-3185, 2010 WL 3747591, at *8 (E.D.N.Y. Sept. 20, 2010). As detailed above, Plaintiff's NYCHRL retaliation claim is brought against Local 4 as a union and therefore requires as a prerequisite a finding that Local 4 breached its duty of fair representation. That claim is thus preempted by federal law and must be dismissed.

## II. Claims Against Dasaro

Plaintiff asserts claims against Dasaro for discrimination and retaliation under the NYCHRL.

### A. Discrimination under NYCHRL § 8-107(1)

Section 8-107(1)(a) of the NYCHRL prohibits discrimination "in compensation or in terms, conditions or privileges of employment" because of a person's gender. While the NYCHRL was formerly construed as coextensive with Title VII, it was amended in 2005 by the Local Civil Rights Restoration Act, N.Y.C. Local L. No. 85, which confirmed that the NYCHRL prohibits a broader range of discriminatory and retaliatory conduct than Title VII. Philip v. Gtech Corp., No. 14-CV-9261, 2016 WL 3959729, at *12 (S.D.N.Y. July 20, 2016). While discriminatory conduct must be "severe and pervasive" under Title VII, the NYCHRL applies a "disparate treatment" test that asks only whether plaintiff has demonstrated by a preponderance of the evidence that he "was treated less well than other employees because of" his gender. Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013); see also Williams v. N.Y. City Hous. Auth., 61 A.D.3d 62, 78 (1st Dep't 2009). Still, the NYCHRL is not a "general civility code," and defendants may avoid liability by proving that a reasonable victim would consider the conduct complained of merely "petty slights and trivial inconveniences." Mihalik, 715 F.3d at 110-111 (internal quotations and citations omitted). On a

14

motion to dismiss, however, Plaintiff need only "proffer evidence of unwanted gender-based conduct." Lenart v. Coach Inc., 131 F. Supp. 3d 61, 69 (S.D.N.Y. 2015); see also Littlejohn, 795 F.3d at 311 (on a motion to dismiss, plaintiff "need only give plausible support to a minimal inference of discriminatory motivation," and "even a single comment may be actionable in the proper context").

Dasaro contends that Gallagher did not allege facts that the harassment he suffered was gender-based. ECF 28-1, Dasaro Memo of Law ("Dasaro MOL"), at pp. 4-8. The Court disagrees, and holds that the Complaint adequately pleads that Gallagher suffered unwanted gender-based conduct to clear the low bar set by the NYCHRL. Most obviously, depicting Plaintiff with bare breasts—an inherently female body part—strikes directly at, and undermines, Plaintiff's identity as a man. Durkin v. Verizon N.Y., Inc., 678 F. Supp. 2d 124, 136 (S.D.N.Y. 2009) ("The significance of breasts with respect to gender identity is unique to women."). Additionally, Dasaro's comment, "What? You don't want Andy to suck your [penis]?" pertains to "gender-specific aspects of [Gallagher's] anatomy," and a juror could "reasonably conclude [it was] made because of his sex, even without any evidence [the comment was] motivated by sexual desire." Sawka v. ADP, Inc., No. 13-CV-754, 2015 WL 5708571, at *11 (D. Conn. Sept. 29, 2015) ("Even if the less specific comments made by men [about the male plaintiff] . . . did not explicitly invoke gender, a jury could reasonably infer that they are gender-related [because] . . . the photographs that inspired them depicted a nude man."). As for the First Photo, Plaintiff may have "reasonably fe[lt] the homosexual depictions strike at his gender or attack him because of his gender," or "intimated, ridiculed or insulted men or masculinity." Fenn v. Verizon Commc'ns, Inc., No. 08-CV-2348, 2010 WL 908918, at *15 (S.D.N.Y. Mar. 15, 2010) (internal citations and quotations omitted). Indeed, a reasonable jury could also find the First Photo to be

15

more demeaning to men than women because it targeted the masculinity and manliness of Gallagher, who is presumably a heterosexual man. Petrosino v. Bell Atl., 385 F.3d 210, 223 (2d Cir. 2004).[6]

Dasaro cites to no authority granting a motion to dismiss when the conduct alleged involves a sexually explicit photograph of the plaintiff. In fact, hostile work environment claims in this Circuit have survived the more stringent Title VII standard where the same-sex harassment involved sexually explicit photographs *of the plaintiff.* See e.g. Sawka, 2015 WL 5708571 (Title VII claim survived summary judgment where plaintiff was harassed by male and female co-workers about nude photos of him published in *Playgirl* magazine prior to his employment); Ruiz v. City of New York, 2015 WL 5146629.[7]

Gallagher has plausibly pled a claim for gender discrimination under the NYCHRL's lenient standard. Dasaro's motion to dismiss the discrimination claim is denied.[8]

---

[6] Although the NYCHRL also prohibits discrimination on the basis of sexual orientation, Plaintiff alleges discrimination solely because of sex. There are no facts pled that either he or Dasaro is, or was perceived to be, homosexual

[7] While neither party cites it, Ruiz is most factually analogous and instructive. There, plaintiffs were two police officers, one male and one female, who were romantically involved. The complaint alleged that another male officer photo-shopped the female plaintiff's face onto a picture of a naked woman and text messaged the image to a group of officers, which included the male plaintiff. 2015 WL 5146629 at *9. Both plaintiffs were also subjected to "multiple instances of sexually-explicit graffiti using their names." Id. The court held that *both* plaintiffs stated a claim for gender-based hostile work environment under Title VII to survive a motion to dismiss, because they were "targeted in Lopez's text message and in the sexually-explicit graffiti. . ." Id. at *10.

[8] Dasaro argues that he did not discriminate against Gallagher "in compensation or in terms, conditions or privileges of employment," because Dasaro played no role in the decisions that adversely affected Gallagher. Dasaro MOL, at p. 8. This argument is unavailing. It is clear that "forcing a targeted employee to suffer 'unwanted gender-based conduct' imposes a different term or condition of employment" to satisfy that part of the statute. Mihalik, 715 F.3d at 110; see also Sletten v. LiquidHub, Inc., No. 13-CV-1146, 2014 WL 3388866, at *8 (S.D.N.Y. July 11, 2014) (motion to dismiss hostile work environment claim under the NYCHRL was denied because "the fact that [plaintiff's] colleagues repeatedly mocked his sexual orientation behind his

## B. Retaliation under NYCHRL § 8-107(7)

The standard for pleading a retaliation claim under the NYCHRL is similar to the standard applied to Title VII retaliation, however "New York courts have emphasized that the standard under the NYCHRL is broader." Thai v. Cayre Grp., Ltd., 726 F. Supp. 2d 323, 332 (S.D.N.Y. 2010). For an individual defendant to be liable for NYCHRL retaliation, he must "actually participate[] in the conduct giving rise" to Plaintiff's retaliation claim. Dillon v. Ned Mgmt., Inc., 85 F. Supp. 3d 639, 662 (E.D.N.Y. 2015). Dasaro claims that the Complaint does not plead that Dasaro "actually participated" in the retaliatory conduct because he did not (1) reduce Gallagher's work, (2) adjudicate his guilt for complaining to Barclays HR, or (3) punish Gallagher by, for example, prohibiting him from being "head crew chief." Dasaro MOL, at p. 9.

Retaliatory acts under the NYCHRL are any acts that are "reasonably likely to deter a person from engaging in protected activity." Williams, 61 A.D.3d at 71 (citation omitted). Guidance from the New York State appellate court advises that

> [i]n assessing retaliation claims . . . it is important that the assessment be made with a keen sense of workplace realities, of the fact that the 'chilling effect' of particular conduct is context-dependent, and of the fact that *a jury is generally best suited to evaluate the impact of retaliatory conduct in light of those realities.* Accordingly, the language of the City HRL does not permit any type of challenged conduct to be categorically rejected as nonactionable. On the contrary, *no challenged conduct may be deemed nonretaliatory before a determination that a jury could not reasonably conclude from the evidence that such conduct was, in the words of the statute, 'reasonably likely to deter a person from engaging in protected activity.'*

Id. (emphasis added).

Plaintiff alleges that that union charges brought against him "were initiated by Defendant Dasaro (along with his brother Sean Dasaro and step-father Gagliardo . . ." and claim that "these charges were initiated in retaliation for Plaintiff's complaints." Complt. at ¶ 47. A jury could

---

back and that plaintiff learned about this behavior adversely impacted his work environment and meant that he was treated less well than other employees based on his sexual orientation").

find that initiating the union charges is a retaliatory act on its own, because it is reasonably likely that a person would be deterred from lodging a complaint about sexual harassment by his supervisor if he knew that the supervisor would initiate union charges against him for making that complaint, as a result of which he could be tried and punished. The Complaint sufficiently alleges that Dasaro retaliated against Gallagher under the NYCHRL, and Dasaro's motion to dismiss the retaliation claim is denied.

## CONCLUSION

For the reasons stated herein, Local 4's motion to dismiss is granted in part and denied in part. The motion is denied with respect to count two of the Complaint, alleging retaliation in violation of Title VII. That claim may proceed against Local 4 in its capacity as a labor organization only. The motion is granted as to the remaining four causes of action asserted against Local 4, which are hereby dismissed.

Dasaro's motion to dismiss is denied.

SO ORDERED.

Dated:        Brooklyn, New York
               May 30, 2017

                                                     /s/
                                           I. Leo Glasser